58 CCPA

**Application of Frank FRUENGEL.**
**Patent Appeal No. 8535.**

United States Court of Customs and Patent Appeals.

May 27, 1971.

Michael S. Striker, New York City, attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. R. V. Lupo, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and LANDIS, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 28–38 of appellant's application entitled "Method and Arrangement for Measuring the Density of Natural Fog in the Free Atmosphere."[1] No claims have been allowed.

The invention relates to a method and apparatus for measuring the density of fog. Utilizing the principle that the intensity of scattered light in a fog-containing medium is proportional to the

1. Serial No. 498,195 filed October 4, 1965 as a continuation of application serial No. 194,235 filed May 14, 1962.

density of the fog-laden atmosphere, appellant's device is capable of determining the range of visibility by sampling a comparatively small volume of the medium. This is accomplished by separating a transmitter and a receiver station from each other only a comparatively small distance as shown in Fig. 1:

FIG. 1

[A4021]

The transmitter station comprises a spark discharge lamp (1) located at the focal point of a parabolic reflector (3) so as to produce direct rays (12) of pulsed light. In Fig. 1 the receiver station is located at a right angle to the direct rays (12), but it is disclosed in the specification that said angle may vary from 10 to 170°. The receiver in Fig. 1 is responsive to light that has been scattered in both the forward (14) and reverse (13) directions. The receiver means includes a protective shield (15), a layer of filters (16), and two groups of photocells (17 and 17a). The groups of photocells are connected to a coincidence stage (24) over preamplifiers (21a and 21b) and main amplifiers (23a and 23b). It is disclosed that this arrangement prevents recording "white noise" caused by ambient light, since only large amplitude, simultaneous signals (24a and 24b) get through the coincidence stage (24) to the output stage (26) while the irregularly appearing small amplitude signals of the "white noise" (24c–24f) do not appear simultaneously and, consequently, are unable to cause an output signal in the coincidence stage.

Claims 28 and 31 are reproduced as illustrative of the method and apparatus claims:

28. A method of measuring the density of natural fog in the free atmosphere comprising the steps of directing a direct light beam composed of consecutive spark discharges of constant amplitude freely through a fog-laden atmosphere in the presence of ambient light so as to scatter part of the direct light of said direct light beam composed of consecutive spark discharges and thus form consecutive pulses of scattered light in a defined region of path of said direct light beam, the intensity of said consecu-

tive scattered light pulses being proportional to the density of the natural fog in said defined region of the path of said direct light beam; and measuring substantially only the intensity of said consecutive pulses of scattered light in said defined region of the path of said direct light beam by directing a receiver against said path with the axis thereof intersecting said defined region of said path so as to measure substantially only the intensity of the scattered light in said defined region without measuring the intensity of the ambient light, the thus measured intensity being proportional to and thus indicative of the density of said fog-laden atmosphere.

31. An arrangement for determining the density of natural fog in the atmosphere comprising, in combination, light pulse transmitter means arranged for projecting in the presence of ambient light a direct light beam composed of consecutive spark discharges of constant amplitude freely through fog-laden atmosphere so as to scatter part of the direct light of said direct light beam composed of consecutive spark discharges and thus form consecutive pulses of scattered light in a defined region of path of said direct light beam, the intensity of said consecutive light pulses being proportional to the density of the natural fog in said defined region of the path of said direct light beam; light pulse receiver means with the axis thereof intersecting said defined region of said path so as to measure substantially only the intensity of the scattered light in said defined region without measuring the intensity of the ambient light, said receiver means being so constructed and arranged spaced from and relative to said light pulse transmitter means that direct light of said light beam projected by said transmitter means is prevented from reaching said receiver means and that only said ambient light and said pulses of scattered light in said region of fog-laden atmosphere are

received by said receiver means; and measuring means included in said receiver means for measuring substantially only the intensity of said consecutive pulses of scattered light received by said receiver means without measuring the intensity of said ambient light, the value of the thus measured intensity being proportional to and thereby an indication of the density of said fog-laden atmosphere in said region thereof.

Claim 29, depending from claim 28, adds nothing of substance to claim 28, while claim 30, also depending from claim 28, recites placing the receiver so that the direct light beam is prevented from impinging upon the receiver. Claim 32, depending from claim 31, more specifically defines the receiver as having a "photoelectric means for transforming the ambient light and the pulses of scattered light received by said receiver means into corresponding electrical signals; means for suppressing those electrical signals which correspond to said ambient light received by said receiver means; and means for measuring a characteristic of the electric signals corresponding to said pulses of scattered light * * *." Claims 33, 36, and 37 depend from claim 32 and recite, respectively, a shield around the photoelectric means, a filter in front of the photoelectric means, and a spark lamp serving also as a flashing beacon. Claims 34 and 35, depending from claim 33, call for placing the receiver so that it receives only back-scattered light (claim 34) or only forward-scattered light (claim 35). Claim 38, depending from claim 31, is similar to claim 32 except that there is no means recited for suppressing those electrical signals which correspond to ambient light.

The references relied upon are:

Silvertooth            2,632,114        March 17, 1953
de Lisle Nichols   2,907,889        October  6, 1959
Silver                   2,925,007        February 16, 1960
Stevens et al. (Stevens), "The Determination of Atmospheric Transmissivity by Backscatter from a Pulsed-Light System," Air Force Cambridge Research Center No. AFCRC TR–57–201, ASTIA Doc.No. 133602, July 1957 (pages vii, 1–8, 10, 11, and 14–16 relied upon).

Stevens discloses a method and apparatus for measuring the density of fog by directing a pulsed-light beam through the fog and measuring the "amount of light scattered back along the path" of the direct light. The receiver may be mounted on the transmitter, it may be separated laterally from the transmitter, or it may be up to 100 yards in front of the transmitter.

de Lisle Nichols discloses a fog density measuring device having a transmitter, a receiver placed parallel to the direct light beam, and a light shield to prevent reception of the direct light from the transmitter.

Silvertooth discloses an electrical filter over a light-sensitive tube, and Silver shows placing a receiver at an angle to a transmitter in order to record forwardly-dispersed light and measure the density of a gas.

■ The examiner rejected claims 28–32, 34, 36 and 38 [2] under 35 U.S.C. § 102 as anticipated by Stevens, reasoning that when the receiver and transmitter of Stevens are separated in accordance with the Stevens' disclosure, the axis of one will necessarily intersect the axis of the other. Appellant argues, on the other hand, that the receiver of Stevens may be positioned parallel to the transmitter's direct light beam, as in de Lisle Nichols, and there is no mention in Stevens that it be at an angle to the direct beam. In affirming the examiner, the board pointed out that the claims are not as limited as appellant asserts. The claims simply call for a receiver "with the axis thereof intersecting said defined region of said path" of the direct light beam. It is clear to us that, since it is disclosed in Stevens that "the amount of light scattered back along the path" is measured, the axis of the receiver must intersect the "region of said path." It is noted that up until the time of appeal appellant

himself argued that there was "intersection" of the two axes disclosed in Stevens but that it was a "long or elongated volume of intersection" which "results from the condition that the displacement between receiver and transmitter is relatively short in Stevens." The claims on appeal are clearly broad enough to encompass this situation.

Appellant faces a similar problem, at least as far as many of the claims are concerned, in regard to his second major argument against the § 102 rejection. That is, appellant argues that Stevens does not disclose a means for preventing measurement of the ambient light, evidently referring to the particular photocell and coincidence stage arrangement disclosed by him. However, appellant's broad claims recite only "measuring substantially only the intensity of said * * * scattered light * * * without measuring the intensity of said ambient light." We agree with the solicitor that the shield around Stevens' receiver and/or Stevens' disclosed operation of his device at night meet this broad recitation since both would exclude ambient light to the extent that "substantially only" scattered light is recorded. Therefore, we will sustain the § 102 rejection as to claims 28–31 and 38.

■ Claim 32, on the other hand, calls for "means for suppressing those electrical signals which correspond to said ambient light," and we can find no such means in Stevens. The examiner at one time argued that in the circuit diagram in the Stevens article there was shown a 0.1 microfarad capacitor between the anode of the photomultiplier tube and the grid of a C6AK5 tube, which capacitor would serve the function of suppressing those electrical signals which correspond to the ambient light. It appears to us, however, that appellant's position in this regard is correct. Appellant asserts that the ca-

pacitor referred to by the examiner is merely a decoupling capacitor which decouples the sensitive grid of the C6AK5 tube from the high-voltage plate supply for the photomultiplier, and it will not exclude the ambient light signals as provided for in claim 32. It is noted that neither the board nor the solicitor mentioned the examiner's arguments in this regard, nor did they refute appellant's contentions concerning the capacitor in question. Therefore, we will not sustain the § 102 rejection of claim 32. In addition, we will reverse the decision of the board as to claim 37, which is dependent from claim 32 and which, like claim 32, has not been rejected on any grounds other than as anticipated by Stevens. Besides, there is no mention in Stevens that the transmitter may serve as a flashing warning beacon as called for in claim 37.

■ Claims 33 and 36, also depending from claim 32, have been rejected under 35 U.S.C. § 103 as unpatentable over de Lisle Nichols, Stevens, and Silver (claim 33) and de Lisle Nichols and Silvertooth (claim 36). Claim 35, which depends from claim 33, was rejected on the same ground as claim 33. de Lisle Nichols discloses all the elements recited in claims 33 and 35, including a means for suppressing the ambient light signals, except that the light in de Lisle Nichols is not "pulsed" and the receiver is placed parallel to the direct light beam to measure backscatter only. Stevens discloses a pulsed light and Silver discloses measuring forward-scattered light. We agree with the Patent Office that it would have been obvious to one of ordinary skill in the art to substitute the pulsed light of Stevens for the undulating light of de Lisle Nichols and to measure forward-scattered light, as taught by Silver, rather than backward-scattered light. In regard to claim 36, we likewise agree with the Patent Office that it would have been obvious to provide the photocell of de Lisle Nichols with a filter as taught by Silvertooth. Appellant argues that the examiner resorted to hindsight in making the various combinations of references; however, we think each of the combinations made is fairly suggested by the references cited, all of which relate to the problem of measuring the density of gas mediums.

■ Claims 34 and 35 were also rejected under 35 U.S.C. § 112 as indefinite since the phrase "from reaching" should be "to reach." Appellant concedes that the examiner and the board are correct in this regard; therefore, we will also sustain this rejection.

For the foregoing reasons, the decision of the board is affirmed as to claims 28–31, 33–36, and 38, and is reversed as to claims 32 and 37.

Modified.